Filed 8/6/26  In re R.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.P., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E087392 |
| Plaintiff and Respondent, | (Super.Ct.No. J292206) |
| v. | OPINION |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Laura Feingold, County Counsel, Joseph R. Barrell, Deputy County Counsel for Plaintiff and Respondent.

1

Defendant and appellant A.M. (Mother) appeals the juvenile court's denial of her request to change a court order wherein she sought reinstatement of reunification services with her seven-year-old son, R.P. (born in September 2018, hereafter Minor). Mother's sole contention on appeal is that plaintiff and respondent San Bernardino County Children and Family Services (CFS) and the juvenile court failed to discharge their statutory duty of further inquiry pursuant to the Indian Child Welfare Act of 1978 (ICWA).[1] We affirm the juvenile court's findings and orders.

## FACTUAL AND PROCEDURAL HISTORY

In February 2022, CFS detained Minor and filed a petition pursuant to Welfare and Institutions Code[2] section 300 after Minor, who was then three-years-old, was found walking in the street soaking wet with a full diaper. Minor had been found alone in public on two prior occasions, including once in the middle of the street. The court ordered that Minor be removed from Mother and Father[3] and declared him a dependent child of the court.

For reasons not relevant to this appeal, Minor was placed with at least four different nonrelative extended family members (NREFM) or foster homes since his

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[2] All further statutory references are to the Welfare and Institutions Code unless specified otherwise.

[3] In 2019, Minor was removed from Father; Mother was granted sole legal custody and primary physical custody. Father is not a party to this appeal.

removal from Mother. A selection and implementation hearing pursuant to section 366.26 was set for August 2023, however the hearing did not proceed because Minor was not a proper subject for adoption and a potential legal guardian had not been identified. As of August 2025, the juvenile court had not set another section 366.26 hearing.

Mother's reunification services were terminated in April 2023. In April 2025, the court ordered that Mother would receive additional reunification services, including individual counseling and domestic violence classes.

In its report dated August 11, 2025, CFS noted that Mother's drug test results were a mix of negative and "no show," that Mother had tardiness and attendance issues with her therapist, and that Mother was consistently late for her visits with Minor. On August 11, 2025, the court terminated Mother's services.

On October 6, 2025, Mother filed a request to change court order pursuant to section 388 to resume reunification services based on changed circumstances, including that she completed all parts of her case plan and had secured housing. CFS scheduled an in-person interview with Mother for October 21, 2025, in connection with her section 388 request, however Mother arrived 15 minutes late and at the wrong office. The interview was switched to telephone and it appeared that Mother was being coached by her friend, who was answering the questions for Mother. Mother's drug testing reflected a positive result for amphetamines in July 2025 and "no shows" for all subsequent tests.

On October 31, 2025, the court denied Mother's section 388 request based on a lack of changed circumstances and the request not being in the best interests of Minor. Mother timely appealed the denial.

A.     MOTHER'S STATEMENTS REGARDING ICWA AND JUVENILE
       COURT'S ICWA ORDERS

Mother stated in her February 2022 initial interview with CFS that ICWA may apply.  At the detention hearing in February 2022, Mother stated on the record that paternal great-grandmother had Seminole ancestry, but that both paternal great-grandmother and Mother's father were deceased.  Mother stated that her father's sisters could speak to CFS, and the court ordered her to provide their contact information to CFS.  Mother was not herself an enrolled member of the tribe.

In February 2022, Mother completed an ICWA-020 form indicating that she is or may be a member of the Seminole tribe.  She also completed a CFS form wherein she stated that she has or may have Native American ancestry, and listed Ju.G. and Jo.G. as "relatives who know of Native American ancestry information."  She did not provide contact information for Ju.G. or Jo.G., other than the cities in Oregon in which they reside.

In March 2022, when interviewed by CFS, Mother stated that she does not have Native American ancestry because her paternal aunts had a different father than her father, and that her aunts' Native American ancestry was through their father.  In April 2022, the juvenile court found that Minor did not come under the provisions of ICWA.

Between April 2022 and March 2025, Mother denied having Native American ancestry at least four more times when interviewed by CFS.

On March 31, 2025, in response to CFS's inquiry, Mother stated that her father may have had Native American ancestry but that she did not have further information.

4

Mother stated that her aunt might have more information, but she did not have her aunt's telephone number.

In April 2025, the dependency court orally ordered that "Inquiry under ICWA is to continue." The minute order of the April 2025 hearing does not reference ICWA explicitly but states that "Department is ordered to continue to comply with its duty of inquiry." (All caps. omitted.) It also reflects that the court adopted the findings and orders "as amended listed on page(s) 16-21 of the Jurisdiction/Disposition Report dated 04/03/2025." (All caps. omitted.) Page 16 of the April 3, 2025, Jurisdiction/Report originally stated "[Minor] does not come under the provisions of ICWA," but handwritten changes were made such that the section now states "Inquiry under the provisions of ICWA to" followed by a circled letter "c."

In Mother's October 6, 2025, request to change court order, where the form JV-180 asks for "Indian tribe," Mother wrote, "Not Applicable."

B.     OTHER FAMILY MEMBERS' STATEMENTS REGARDING ICWA

Father stated in his initial interview with CFS in February 2022 that ICWA does not apply. CFS attempted to contact Father again in July 2025, but the telephone calls to him were answered, then quickly hung up.

Maternal grandmother stated on two different occasions to CFS in 2022 that ICWA does not apply. Telephone calls from CFS to maternal grandmother in July 2025 were not answered and not returned.

In July 2024, Minor's then-caregiver (NREFM) stated that there is no Native American ancestry in the family.

5

In August 2024, paternal grandmother stated there is no Native American ancestry in the family.

In March 2025, Mother's brother denied any knowledge of having Native American ancestry.

## DISCUSSION

Mother contends that the juvenile court and CFS did not conduct an adequate further inquiry pursuant to ICWA after she indicated that she may have Seminole ancestry, and specifically that CFS did not contact any federally recognized Seminole tribes.

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129.) Pursuant to California's implementation of ICWA, the juvenile court and CFS "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

The "continuing duty" has three phases: "the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The duty of further inquiry is triggered when there is "reason to believe that an Indian child is involved." (§ 224.2, subd. (e).) "CFS does not discharge their duty of further inquiry until they make a 'meaningful effort' to locate and interview extended family members and to contact [the Bureau of Indian Affairs] and the tribes." (*In re K.T.* (2022) 76 Cal.App.5th 732, 744.)

6

Before addressing Mother's contention regarding inadequate ICWA inquiry, we must consider CFS's argument that Mother's appeal is not ripe. "The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) In order to be ripe, the issues raised must be "sufficiently concrete to allow judicial resolution even in the absence of a precise factual context." (*Ibid*.)

The question of whether the ICWA inquiry has been satisfied is not a justiciable controversy until the juvenile court makes a "final ruling" about the applicability of ICWA. (*In re J.J.* (2022) 81 Cal.App.5th 447, 461 (*J.J.*).) In *J.J.*, the reviewing court held that the mother's ICWA claim was premature and not ripe because "the dependency case is still ongoing" and thus "any perceived deficiencies with ICWA inquiry and noticing may still be resolved during the normal course of the ongoing dependency proceedings." (*Id.* at p. 461.)

The juvenile court here did not make any ICWA findings when denying Mother's section 388 petition. It was not required to do so at that point in the proceedings. (*In re N.F.* (2023) 95 Cal.App.5th 170, 180 [denial of section 388 petition for reinstatement of reunification services does not implicate ICWA because it is not an "Indian child custody proceeding" as defined in section 224.1, subdivision (d)(1)].) The juvenile court's current ICWA order from April 2025 is that the inquiry shall continue. Mother's parental rights have not been terminated, and a section 366.26 hearing to potentially terminate her parental rights or establish a legal guardianship is not presently set. Contrary to Mother's

assertions, there is no current finding from the juvenile court that ICWA does not apply.

There is no order for us to reverse, thus there is no controversy that is ripe for review.

It is true that the court originally made a finding that ICWA did not apply in April 2022, after Mother stated that her father did not have Native American ancestry. However, in April 2025, following Mother's statement that her father may have had Native American ancestry, the court's finding was modified to order the ICWA inquiry to continue. Although we do not agree with Mother that the April 3, 2025, minute order and Jurisdiction/Disposition Report are ambiguous or require speculation with respect to the court's ICWA orders, any potential ambiguity is resolved by the reporter's transcript wherein the juvenile court clearly stated that the ICWA inquiry is to continue. (See *People v. Smith* (1983) 33 Cal.3d 596, 599 [when the record is in conflict, "it will be harmonized if possible"].)

We also do not agree with Mother that the court was required to expressly state that it was vacating, withdrawing, or amending its prior ICWA finding. Mother does not supply any authority in support of the concept that the court must explicitly use the words "modify" or "amend" to revise its prior findings. In fact, the juvenile court is *required* to modify its prior ICWA finding if new information is supplied. (§ 224.2, subd. (i)(2) ["The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker . . . to conduct further inquiry."].) Although not stated in express terms, the juvenile court's April 3, 2025, orders impliedly reverse the prior ICWA finding and, consistent with section 224.2, subdivision (i)(2), require further inquiry. CFS is clearly aware of its

8

duty to conduct its further ICWA inquiry, as it continued to seek ICWA information from Mother and other family members in 2025.

Contrary to Mother's claims, she does not have to "wait until parental rights have been terminated" to seek appellate relief of an ICWA inquiry issue. She may, for example, file a petition pursuant to California Rules of Court, rule 8.452 upon the court setting a section 366.26 hearing. However, in any instance, she would need for there to be an adverse ICWA ruling by the juvenile court for her to challenge on appeal, which at this time does not exist.

## DISPOSITION

The juvenile court's findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.

9